Good afternoon. Illinois Appellate Court, First District Court is now in session. The First Division, the Honorable Justice Carl Anthony Walker presiding, case number 1-9-0368, People vs. DeAndre Brown. Thank you, Darren, and good afternoon, everybody. I'm Justice Walker. I have here with me today Justice Pearson, Justice Coghlan, and I'd like to start by asking the lawyers to please ask on behalf of Mr. Brown. Okay, thank you. Dan Pebo-Varcek on behalf of the people of the state of Illinois. Pebo-Varcek, thank you. Okay, and Mr. Moritz, approximately how much time do you need today? 20 minutes, the most. Okay, and how much time are you saving for rebuttal? I'll save three. Three minutes for rebuttal. Okay, you can do that. And Mr. Pebo-Varcek, how much time do you need? I think 15 minutes, Your Honor. 15 minutes total time, and you won't have any rebuttal time. Okay, with that, Mr. Moritz, you can go ahead and get us started. Thank you, Your Honor. May it please the court, my name is Dean Murask. I represent DeAndre Brown. I represented him at the litigation involving the motion for new trial as well. I obviously am aware, because counsel made a motion to supplement citation with the co-defendants appellate opinion, which was issued on March 31 of 2021. I'm obviously aware of that opinion. I still  regardless, if that's okay with the court, I don't want to waste anybody's time, but I still would like to argue that issue. I would like to argue the sentencing issue. So if I may, it's our position that my client was deprived of a fair trial by reason of ineffective assistance of counsel and prejudice to his cause, or the reasons that I cited in my brief. I'm not going to go through them all, and obviously I read the Brown decision, I'm sorry, the Bell decision very carefully. The issue, when you boil it down, the issue in this case is identification. The Illinois pattern jury instructions recognize both previous description and ability to observe as issues that are relevant in terms of the Bell opinion, did not consider the impeachment that important. I respectfully disagree with that opinion. I think the impeachment in regard to the distance victim was from the individuals who shot at her. Well, doesn't the impeachment become more important when counsel alleges that his entire theory was simply to show that the state didn't prove its case? That no, absolutely not. Judge, I've been trying cases for three decades, and the point is, you cannot argue something that is not an evidence unless you perfect your impeachment. The impeachment, the impeaching information is not an evidence. And the fact is, counsel, you may have misunderstood my question because that's exactly what I just said. Oh, I'm sorry. I didn't misunderstand. My apologies. I'm not a great zoomer, Your Honor. So I apologize. What I said was, doesn't that make counsel's effective impeachment more important? Because the primary theory here was that we're not gonna present any evidence. We're just gonna show you that the state can't prove their case. So therefore, it's really important for defense counsel to impeach the state's witnesses. If that's how that I understand your point. And obviously, I agree with your point because the impeachment that was involved here focused on the central issue in this case, which was identification. We're not talking about something that was separate and all about the state being able to prove your case. They've got a private vacation. Okay, so stay with us. Counsel. Okay, if if I may, then, uh, the impeaching information in regard to distance in regard to a description that was originally given by the complaining witness at the scene, which there were no resemblance to my client based on the evidence that was introduced at the motion for new trial and the issue in regard to whether she actually described this brown and black toned gun before or after she saw it on Twitter were all matters that were proved prejudicial to my client when they were not counsel. Mr Morris, didn't the officer testify that she did not tell him before she arrived at the police station anything about the description of the gun? I believe so. Yes, Judge. Well, wasn't that what more do you need than that? Well, Judge, it was my memory that she had. No, my memory of it was that she had actually said she had described the gun before. Right. But he said that she didn't. He testified that she did not, that the detective did, that the that the victim did not describe the gun prior to arriving at the police station. I'm sorry, Judge, I lost you. Whose evidence are you referring to? Who's talking about the detective's testimony? It was kind of, you know, collaterally impeaching her testimony. Um, I still believe that. I don't know that that was done necessarily by, uh, counsel for defendant brown. It may have been done by counsel for defendant bell. I honestly don't remember, Judge. But, but I still believe that there should be emphasis on points that are related to identification through impeachment. And when one does not do that, you wind up with a rebuttal argument by the state's attorney that points that fact out as it was pointed out in regard to the distance the victim was from the, uh, the shooters in this case where counsel got torched in rebuttal argument when the state's attorney appropriately pointed out that there was no evidence that the victim or that the offenders were 20 ft away from the victim at the time of the shooting. So it's our, it's our belief that the explanations gave by trial counsel in regard to why you wouldn't impeach a witness in a reasonable doubt case were grossly inadequate. Uh, there is no, when you're doing a reasonable doubt case, you obviously have to establish your evidence through the cross examination of witnesses. And you have to anticipate that when you cross examine someone, if they say something different, that's material from what they said before, you're going to have to impeach them either through a state or by introducing that evidence. And if you don't introduce that evidence, it's gone. I mean, part of, I guess my quandary in terms of looking at the record in this case is why counsel asked the questions that would have set up the impeachment if he wasn't going to perfect the impeachment in the first place. What was the point of that? There was no point of it. It wasn't. Didn't he explain in his testimony what he believed the point of it was? Yeah, he did. And I found that quite frankly, I mean, you don't, you may not agree with his strategy, but he explained what it was. He did explain your honor. But calling something a strategy doesn't mean it's not an effective assistance of counsel standing in front of a jury as as the council testified at the motion for new trial and saying, well, I held a police report in my hand and I find that very effective. So I believe that the jury would have known that this witness would have said something different because I'm holding a document in my hand is unpersuasive is the kindest way I can describe it. Um, moving on, judge, at least in regard to this issue, this issue, I know the state cited the grown case in its brief. I don't believe those facts are applicable to ours. The grown decision did not establish a usable. All of these cases are basically dependent on the facts of each case and how the failure to impeach would have been material and would have prejudiced the defendant. This was a case where my client was identified obviously by Miss Weatherspoon and there was the media evidence that was introduced, but there was no other evidence. This wasn't a slam dunk by any stretch of the imagination. My client made no statement in this case. There was no physical evidence connecting him to this crime that was recovered from him. He was not identified by the minor who had also identified Mr Bell. So I believe my client was prejudiced by reason of the failure to prove up impeachment that was vital to the central issue in the case. Your honor's in relation to the gun. Uh, I know that, uh, you know, the reasoning was in introducing evidence that while they were both together again, Mr Bell and Mr Brown were connected to some gun that the officer I don't believe saw either of them with. He didn't see him toss the gun and that was found in this backyard through which they ran when they were arrested. It is my humble opinion and my position that that connecting your client to same time you're with the individual you're charged with committing an attempt murder with is preposterous, and it didn't serve the purpose. If there had been evidence in the record that there's only three of these black and tanned guns or tan tone guns existing in Chicago, then maybe it's relevant. But there's who knows? There could be thousands of them out there. The police get hundreds of guns every week. So the whole point of it, even though counsel described his strategy, your honors does not make it a strategy that's not ineffective. If it's silly, it's not good. And quite frankly, with all due respect, I don't believe that, uh, that introducing that evidence was wisely thought out. Now I know they'd argued in its brief appropriately that my client assented to and agreed to the admission of that gun. I obviously cited the ugly case for the proposition, which says we have found no authority explicitly precluding a defendant from raising a claim of ineffective assistance of counsel based on defendants agreement with counsel's actions. You know, my client was barely 18. Well, he was older. Obviously, he's about 20 at the time of the trial. I don't know whether he'd be to ask him a question on the record like that. Do you agree to this strategy in regard to an issue like this? I think is meaningless. I mean, I understand why Judge Woloski did it. I think she was wise to do it in terms of trying to protect the record. But to expect this young man who I believe the defense counsel said he talked to him for a few minutes at court beforehand to be able to intelligently assess this information and then say, No, I'm not gonna agree to doing that is just I don't know. It just doesn't make any sense. So in that regard again, we believe that there was ineffective assistance of counsel again. Cumulatively, we believe that all of the errors that we pointed out in our brief established, I think it's important for you to also get to the issue of the alibi witness because it's my understanding that council did not even make a phone call to the witness didn't send out an investigator basically did absolutely nothing as to that witness. So I'd like to hear your argument on that issue. Well, again, my argument that I raised in my brief was that you're obviously an attorney has an obligation to conduct a reasonable investigation. There was clearly uh exculpatory evidence that was presented to him for which he I believe was obligated to review uh and to at least talk to this witness about what it is you have and you don't. I don't know how you don't talk to a witness who's potentially an alibi witness, at least to evaluate them. And I know that the state's argument and I don't mean to speak for counsel, but I know from his brief is that well, council had already decided that we're gonna try this case beyond as a defense of beyond a reasonable doubt. And ultimately, that may be absolutely the right thing to do. But you still got to talk to the witness. I mean, you've got to talk to people. You have to assess them to see whether they your decision as trial counsel to proceed with a reasonable doubt defense is correct. And that was not done in this case. And if you're going to use the reason that we already decided that we're going to use beyond a reasonable doubt as a defense, then you have to do the things in your defense that that defense requires, like proving up impeachment. So that's our if there's no other questions in regard to that issue, I would like to address the sentencing. Yes, please go right on. Thank you. Uh, in regard to the sentencing issue. Um, obviously, the court is one reads the record of Judge Walowski. She mentioned the number of times that, you know, she was hamstrung by the laws as it existed on that she was required to give the defendant at least 52 years in the Illinois Department of Corrections, which is what she did. Gave him the minimum. Um, we believe that this sentence violated the proportionate penalties clause of the Illinois Constitution, an issue that was raised in the trial court at the motion to reconsider. It wasn't raised in the way that I would do it today, given the state of the case law today. But it was raised in the trial court. It was ruled on by the trial court, and it is not raised for the first time on this appeal. Um, the court, in fact, references, uh, on page 22 of the transcript when it's addressing the defendants after sentencing. Obviously, your attorneys will continue to pursue this case as far as possibly the constitutionality of the mandatory minimum sentence. And then the court makes a couple other comments. So the court was aware that we had raised this issue in the trial court. Deandre Brown had he been born as I put in the brief 61 days later would have been 17 years old. He was eight. I'm sorry. I stopped because I saw the yellow. You can continue. Okay. Um, was 18 years and two months old. He received. There was no meaningful. It's clear there was no meaningful sentencing hearing because there was no mitigation considered. Absolutely none. This kid had. I'm sorry. This young man had no criminal history. He had obtained his G. D. Had letters from his family. None of that could be considered because of Judge Woloski's belief in the mandatory minimum sentence. And I don't blame her for that. But now, based on the house case, obviously, which I cited in my brief, I believe that this case should be remanded for resentencing. I don't believe the defendant should be required to file a post conviction petition. The court can conduct an appropriate sentencing hearing where mitigation, including the fact that he was only 18 years old and two with two months can be considered at a sentencing hearing. And again, this issue was raised at the at the trial court level before Judge Woloski just believe that, you know, I understand the state, the state side of the Harris opinion and all that. But this isn't Harris. This is closer to house than it is to Harris because this issue was was raised in the trial court again, not perhaps in the manner that I would raise it today. I would have been more detailed based on the law. That's a letter that's come down since then. But we still believe firmly that this case should be who's not going to be released even if he gets his 15% for another 44 point whatever number of years I put in my brief. That's what I have for your honors. Unless there are any other questions, is your argument that the mandatory minimum of 26 years consecutive, um, should not apply to this defendant because he was 18. Yes. Yeah. I mean, if if the no, what I'm saying is, is that he should get a meaningful sentencing here. But the man is not meaningful about it. The mandatory minimum is 26 years, right? Yes, sir. And it had to run consecutive because of the nature of the offense. Yes, sir. So if he had a new hearing, got the mandatory minimum, um, where are we going? Well, what I'm asking is that that the mandatory minimum be waived for a person of his age because for the reasons that I, you know, that were enunciated in house. Well, house was argued yesterday in front of the Supreme Court. Thank you. So we shall see, right? I guess. Hopefully. But in any event, you really don't have a record that was developed in the trial court, do you? We don't have the kind of record, perhaps that well, what can you have? No record. You have a you have a you have the judge acknowledging that you've got an 18 year old. That's that's what you have. Well, but I would submit your honor that what that establishes that there was no meaningful sentencing hearing because what was the sense of developing a record when the mandatory minimum was 52 years in the Illinois Department of you're not suggesting that there's not a necessity for for a full record for what I'm what I'm saying is, which is why excuse me, which is why probably it's something that would be more appropriate in a post conviction proceeding. I guess the reason I'm proposing that for a remand judges, because, as I understood Harris and House, the difference between them in regard to remanding for post conviction or second stage post conviction proceedings, as was suggested in house and having the defendant to a post conviction petition is because this issue was raised in the trial court. And I think that the trial court can conduct a meaningful sentencing hearing. There's no reason to submit a post conviction petition and take years to get to that point when we have the record now. That's all I have. Thank you, Mr Morris. And, uh, Mr. For the last week on, you know, may please the court. The defendant's claims here have high burdens and he has not met them with regard to ineffective assistance. Um, the trial court's determinations of the merits of those claims after an evidentiary hearing will only be reversed if there was manifest error. That means error must be clearly evident and indisputable. Um, turning to the issue that Justice Walker brought up, um, uh, the investigation of the alibi witness. First, um, defendant himself provided trial counsel with everything he needed to know in order to decide whether or not to call that witness. According to defendant, his did not conduct a sufficient investigation, but this is not what the law says. Um, the trial court, this court's decision in Rodriguez makes it very clear. Um, it was absolutely reasonable for trial counsel to rely on the defendant's knowledge of his own alibi. Just like in Rodriguez trial counsel here both knew what the alibi witness had to offer and had a reasonable basis for not calling him. In this case, that reasonable basis was to keep the jury focused on the prosecution's failure to meet its burden of proof and to avoid presenting a potentially weak case where you were calling a close relative of the defendant to provide an uncorroborated alibi. Well, why can't the argument simply be a closing that not only did the state prove its case, but also my client had an alibi. As you heard from the credible alibi witness who just testified before. That that could be the argument made. But this was a strategy decision. And the attorney, I believe you had 26 strategy decision. The strategy decision was that I won't even speak to this guy. I won't even send an investigator out to talk to this guy because I really don't even want to go down that road. Uh, that sounds like effectiveness to me. Well, so this is a situation where we do have the trial counsel's testimony from the motion for a new trial. And he never said anything about I don't want to go down that road. He said that he did consider that he asked questions of his client concerning what it was that his grandfather would say. Don't agree that the best way to determine what the grandfather is going to say is to talk to the grandfather's investigator out to talk to the ground. I mean, that's the absolute best way to determine what a witness is going to say, not based upon what someone else believes. The witness is going after speaking with the grandfather or having an investigator speak with the grandfather. It may have been totally reasonable to say, No, we're not going to call the grandfather. I, too, have been a part of many cases where alibi witnesses were terrible, especially family members, because it's clear that they're just saying what they've been told to say. Yes, we all understand that. But I think what what Mr Borasky is arguing is something totally different here, that there was an obligation to at least have a conversation with the grandfather, an investigator to have a conversation with the grandfather, and that didn't happen here. Well, so I would rely on Rodriguez to say that that isn't an absolute requirement. But I there are such things as terrible alibi witnesses, and this grandfather was one of them. He was only an alibi witness in the very loosest sense of the word. He admitted in his testimony of the motion for a new trial that he was not with the defendant at the time of the shooting, and his attempts to nevertheless provided an alibi to his grandson were transparent, and they were incredible, which means that even if the defendant could prove deficient performance here on this issue, and as I said, I believe Rodriguez shows it wasn't deficient, but if he could, he still can't prove prejudice because of the fact that you have an incredibly problematic alibi witness who couldn't corroborate anything and who frankly gave an absurd story. Now, opposing counsel in his reply brief argues that the fact that the trial court at the motion for a new trial didn't explicitly declare the defendant's should be determinative of this issue, but that regardless of whether that explicit credibility finding is made, it doesn't change the deference that's owed to the trial court's determination of the claims merits on that issue because after hearing the defendant's grandfather's testimony, the trial court found it reasonable for the trial counsel to have done the amount of investigation that he did and to have not called him as a witness, and it's that determination, the reasonableness of the counsel's performance that can only be reversed if manifestly erroneous. The trial court was in the best position to make that determination. Yeah, I would agree with you if counsel had done something because counsel did nothing. I don't know how you get to reasonableness, but you can move on to your next argument with with regard to impeachment of the victim. Your honors. Um, this was a walker also had some questions about this, and I want to make sure that I directly address the questions that I heard him bring up. Um, the Bell court, I would just note, um, did consider and reject these same arguments and for good reason, because the trial court here heard the trial counsel's testimony about his strategy for cross examining the victim, and the trial court did find it reasonable. Um, and once again, we are reasonable to decide that I'm going to impeach the witness, even though I'm not going to affect the impeachment. Right. What about that? Well, let me give you an example, Your Honor, of how, in fact, the way that defense counsel in this case cross examined the victim actually got more, uh, got more mileage than he could possibly have done if he actually proved it up. And that goes to the £200 description of the defendant in a case report that opposing counsel brought up in his opening three and stated that the was ineffective for failing to prove up that the victims that described the, uh, shooter as £200. Um, I pointed out in my brief and opposing counsel didn't respond in the reply brief. Um, he may very well respond today, but that case report, it makes it very clear. There's two victims who are interviewed, uh, Miss Weatherspoon and her boyfriend, and it's absolutely unclear from that report who gave the £200 descriptions because it's in a separate part that just gives the description. It's not attributed to either of the either of the victims in this case. So that wasn't something that he could have called that officer and actually proved up against Miss Weatherspoon. But nonetheless, by doing it the way that he did it, he took that case report. He stood right next to the jury box, and he said, Didn't you tell officer so and so that the shooter was £200? And then he called. Then he asked a subsequent witness and got out. I believe that the defendant was about £140. So he by, um, by insinuation, he created impeachment that he couldn't even prove up. And he described in his testimony how he did that with a number of other things. Um, and based off of I'm not saying this is an appropriate strategy. In fact, I think it's entirely inappropriate strategy. If you're if you are going to, um, impeach a witness, you gotta prove it up. But not the reason it's inappropriate is because it's so effective because of the fact that by impeaching someone by implication without proving it up, you can you can do it even if there isn't any impeachment. But the question here is effectiveness. It's not propriety and effectiveness. Um, it's pretty clear that was an effective strategy because he got out more impetuous than he would have if he had only asked the questions he could prove up. Um, simply put, and I know that the state agrees that this strategy was inappropriate. You can continue. And it's in my brief as well. Your honor, I actually I cited a couple of cases where in the past, uh, courts have found it effective for an attorney to have done something that that same court found to be inappropriate 10 years earlier. And it's not the law change. It's simply that effectiveness sometimes on behalf of the defendant, um, doesn't it's not always drawing inside of the lines, unfortunately. And that's that's the situation we have here. Um, I know that there's a few other small issues of impeachment that, um, and I would, I would just say that I addressed all impeachment issues in my brief. And if there aren't any questions about the other impeachment issues, I want to move on to the recovered firearm. Um, because the trial counsel made a strong and reasonable argument that the recovered gun was the same gun that co defended bell was holding in the twitter post and that this meant that the victim misidentified it as the attempted murder weapon. The strategy was based on uncontested ballistic evidence that had the potential to also discredit the victim's identifications of the dependents as the shooters. Um, once again, after that evidentiary hearing, the trial court found this to be a reasonable strategy. Um, and that's once again puts us in the world of manifest error. But we also have going and intelligent consent in this case. Um, and that the trial court was in the best position to find that knowing intelligent consent. And I want to talk about ugly because defendant relies on ugly to claim that knowing an intelligent consent does not fire a claim of ineffective assistance. But ugly didn't even involve knowing intelligent consent. Ugly involved a claim of invited error. And for what it's worth, at least right, uh, invited error has never barred ineffective assistance claims. But knowing an intelligent consent does bar ineffective assistance claims. That's what the Illinois Supreme Court said in people versus page. That's what the Illinois Supreme Court said in people versus fair. And that's what this court has said in people versus Anderson and in co defendants bells bells decision. So this absolutely was an appropriate thing. But like I said, even if you don't find knowing an intelligent consent, there's this is still a reasonable strategy that absolutely had the ability to potentially secure an acquittal in this case. Um, I'm not going to address the evidentiary issue regarding the screenshots because of the fact that, um, it wasn't raised by opposing counsel. Um, no need to. You can move on to the sentencing issues. Thank you, Your Honor. Um, with regard to the sentencing issue, um, the key is that, um, there isn't an appropriate record here. And I know opposing counsel says that this issue was raised in the trial court, and I'm not disputing that. But you agree there's an appropriate record, right? Not send it back to the trial court. So the trial court can make an appropriate record. Maybe when it goes back to the trial court will find that the defendant is incorrigible and for the life sentences appropriate, remanding it for a new sentencing. Curious isn't appropriate. It's not supported by the case law. Your Honor, the appropriate remedy is for the defendant to pursue this constitutional claim based on post conviction petition. And that's frankly what all opposing counsel's case law says. Uh, house is a post conviction case. Minifield is a post conviction case. Um, Harris, the case that I cited for the Illinois Supreme Court. That's a direct. So and that's the one that said, No, you've got to do this as a post conviction petition. Um, and it's not. These cases don't say if it's not raised before the trial court, then it has to be a post conviction. It's whether or not it's a record is provided. That's sufficient for the appellate court to review it on direct review. And and we just don't have that. The record in this case only contains basic information about the defendant. The kind of information that, um, Minifield, which is cited by the defendant in his reply brief. Um, the court in Minifield said wasn't sufficient and that he needed to do a post conviction hearing in order to present additional evidence. Um, this record only contains basic information. There's nothing about his circumstances and how they fit into the evolving science. And your honor is your honor is absolutely right that the trial court judge here is the appropriate venue to consider whether or not this particular defendant and this particular defendant's circumstances, um, are raised a conviction petitions are for, and that's the appropriate thing here. Um, if I may have just one moment, your honors. Sure. Um, okay. I'd like to make two quick final points if your honors will allow. Um, the first is, I do want to point out that the, uh, defense counsel at trial and defense counsel for co defendant bell adopted each other's cross examinations on every single witness. So when a co defendant co defendant counsel proved up an impeachment on the victim, like that absolutely applied to this defendant as well. Same jury heard the same evidence. They adopted that testimony right there in front of the jury. So that's not something that can be ineffective because it's proven up. Uh, and the final point, um, is just with regard to consent. Um, and the fact that the defendant was 18 and agreed to, um, to this strategy with the recovered firearm opposing counsel, um, said that talking to the defendants and confirming that they agreed with that strategy was meaningless. But then he also said that this was that the trial court did it correctly and there was the right thing to do to protect the record. And those two things are completely inconsistent because if she's protecting the record, what she's doing is she's recognizing the fact that given the circumstances here, this is an unorthodox strategy. So she's trying to confirm that this isn't something that is going to automatically come back as an ineffective assistance of counsel claim. Um, for that reason, the remedy that that the trial court has is to question the defendant about and if it's meaningless, then it doesn't protect the record. But as I said, the case law supports the fact that this strategy, the way that the trial court handled it is appropriate. And for all the reasons that I've stated today, as well as additional reasons stated in our brief, the people of the state of Illinois would ask that you affirm the defendant's convictions and sentence. Yes. Thank you. Mr. People were ski and Mr Morales. We're back to you. Judge, I'll wrap it up for justice. I'm sorry. I'll wrap it up fairly quickly in regard to counsel's last point. All I might in regard to Judge Woloski and admonishing or asking the defendants if they were consenting to this odd defense. Um, I'm simply complimenting Judge Woloski because I think one would be criticized in her position no matter what she did. If she didn't, she'd be criticized. If she did, she was trying to make the record clear. I would note that when she did ask the questions of these defendants and of my client, there was no inquiry in regard to how old he was, how far he'd gone in school, how long an opportunity he had had to discuss the strategy with counsel. Uh, you know, did he have any questions that he wanted to ask counsel about that strategy before the court proceeded? None of those questions were asked. So that was the purpose of my comments earlier. Second, in regard to the alibi witness, I know the state alleges in the in, uh, in their argument and in their brief that he was incredible. But Judge Woloski didn't say that. I mean, I wouldn't have raised the issue on appeal of Judge Woloski said, I heard Mr Simpson and I believe I didn't believe a word he said because he's this young man's grandfather and none of what he says makes sense. The issue wouldn't have been raised as part of the issue of ineffective assistance of counsel, but she didn't and she's a very bright judge. And if she thought that that was an important note to make, I believe that she would have done so. Therefore, I think it is inappropriate to dismiss that portion of the ineffective assistance of counsel issue, uh, based on speculation that Mr Simpson was not credible. Mhm. And I'm not going to go through all the other stuff. Your honors have my briefs and my reply briefing and I thank you very much for listening. Thank you both. We appreciate your excellence today. Excellent briefing, excellent, excellent argument and the hearings adjourned. Thank you both.